IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| CALVIN BRADSHAW, #272572     * | |
|         Plaintiff, | |
| v.     * | CIVIL ACTION NO. AW-05-3019 |
| DR. MOTTIE MULLETA     * | |
| DR. GRADY FOSTER | |
|         Defendants.     * | |
| *** | |

**MEMORANDUM**

Through his original and amended 42 U.S.C. § 1983 civil rights complaints for injunctive relief and compensatory damages, Plaintiff alleges that Defendants, a prison physician and dentist, failed to follow a prescribed formulary pain medication regimen ordered by a doctor at the University of Maryland Medical System ("UMMS") that was to begin on or about October 14, 2005.[1] Paper Nos. 1, 9, & 12. He claims that he was not provided the medication until October 25, 2005. Paper Nos. 9 & 12.

I. *Dispositive Filings*

Defendant Mulleta has filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment with regard to the care provided to Plaintiff.[2] Paper No. 15. Plaintiff has filed an opposition response thereto. Paper No. 20. No hearing is needed to resolve the constitutional issues presented in the matter. *See* Local Rule 105.6. (D. Md. 2004). For reasons which follow, the Court shall grant Defendant Mulleta's dispositive filing, which has been construed as a Motion for Summary Judgment.

---

[1] Plaintiff originally indicated the pain medication was to start on September 6, 2005 or September 14, 2005, but subsequently modified the date in an amended complaint. *See* Paper Nos. 1, 9, & 12.

[2] Service of process was accepted by Defendant Foster, who filed an answer on April 27, 2006. Paper No. 32. The docket shall be amended to reflect the correct spelling of Dr. Foster's first name.

II. *Standard of Review*

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of showing that there is no genuine issue as to any material fact. However, no genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *Celotex*, 477 U.S. at 322-323. Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

A prisoner presenting a denial of medical care claim in violation of the Eighth Amendment must prove two essential elements. First, he must satisfy the "objective" component by illustrating a serious medical condition. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995); *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998). If this first element is satisfied, the prisoner must then prove the subjective component of the Eighth Amendment standard by showing deliberate indifference on the part of prison officials or health care personnel. *See Wilson v. Seiter*, 501 U.S. 294, 303 (1991) (holding that claims alleging inadequate medical care are subject to the "deliberate indifference" standard outlined in *Estelle*, 429 U.S. at 105-06). "[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). Medical personnel "must both be aware of facts from which the inference could be drawn

that a substantial risk of serious harm exists, and [they] must also draw the inference." *Id.* at 837. Healthcare staff are not, however, liable if they "knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." *Id.* at 844; *see also Johnson v. Quinones*, 145 F.3d at 167.

III.    *Analysis*

Dr. Motti Mulleta ("Mulleta") argues that the Complaint fails to state a claim upon which relief may be granted. He further claims, through the presentation of medical records, that Plaintiff received constitutionally adequate medical care.

According to the medical record, on August 8, 2005, Grady Foster, DDS ("Foster") ordered an off-site oral surgery consultation for Plaintiff at the UMMS to evaluate his complaints of a deeply decayed tooth, jaw pain, and jaw "looseness."  Paper No. 14, Exs. A & B at Mulleta and Collick Affs.; Ex. C.  On September 6, 2005, an oral surgeon at UMMS extracted Plaintiff's tooth, and found that as Plaintiff's jaw was stable, no further treatment was necessary. *Id*. The oral surgeon ordered a two-day prescription of Vicodin for Plaintiff's pain. *Id*. Mulleta noted the oral surgeon's order, but changed the order to Percocet, a nearly identical and comparable pain medication, because Vicodin is not in the Maryland House of Correction Annex ("MHCA")[3] formulary.[4] Paper No. 14, Exs. A-C. Mulleta ordered the Percocet to be taken "as needed" ("PRN").[5] *Id.*, Exs. A & B.

---

[3]    Effective May 3, 2006, MHCA is known as the Jessup Correctional Institution. *See* Division of Correction Institution Bulletin #16-06.

[4]    According to Mulleta, Vicodin consists of acetaminophen and hydrocodone, while Percocet consists of acetaminophen and oxycodone.

[5]    "PRN" in prescriptions is an abbreviation for *pro re nata*, a Latin phrase meaning 'as needed.' The times of administration are determined by the needs of the patient. *See* MOSBY'S MEDICAL & NURSING DICTIONARY 888 (1983).

Mulleta maintains that given the PRN designation for the distribution of the Percocet, the medication would not be dispensed until Plaintiff specifically asked for it. In reliance on the medical records, Mulleta affirms that Plaintiff did not request the Percocet between September 6 and September 8, 2005, despite visiting the dispensary to receive his Prozac. Paper No. 14, Exs. A-C. Mulleta claims that after September 6, 2005, he further examined and treated Plaintiff for other conditions and did not participate in his dental care. *Id*., Exs. A & B.

Between September 10 and September 13, 2005, Plaintiff was seen by Grace Okoro, R.N., Jimmy Akingbade, P.A., and Foster. He complained that: (i) he had not received a narcotic pain medication; and (ii) he was experiencing post-surgical mouth pain. *Id*., Exs. B & C. Plaintiff was prescribed an 800 milligram dose of Motrin every eight hours PRN for two days from September 10, 2005, and was prescribed Motrin and an antibiotic by Foster on September 12, 2005, because the dentist noted some redness and slight swelling of Plaintiff's gum at the site of the tooth extraction. *Id*.

On September 28, 2005, Foster re-examined Plaintiff, who indicated that he was still experiencing pain and tenderness at the tooth extraction site. *Id*. Foster applied more dry socket paste to Plaintiff's tooth cavity. *Id*. On October 5, 2005, Foster referred Plaintiff to the oral surgeon at UMMS for follow-up care. The oral surgeon examined Plaintiff on October 14, 2005, and noted: (i) the surgical site was healing normally; and (ii) there was no edema, erythema, purulence, or swollen lymph glands in the area. Paper No. 14, Exs. B & C. The oral surgeon noted Plaintiff's complaints of pain on palpation, but found that not all of his complaints were consistent with a dry socket. He nonetheless applied another dry socket dressing and suggested a follow-up appointment in one week to rule out a neurological cause of Plaintiff's pain due to a previous jaw fracture.[6] *Id*.

---

[6] Mulleta states that Plaintiff does have a history of migraine headaches due to his jaw fracture and is receiving Midrin and Inderal for that condition. Paper No. 14, Ex. B.

In a progress note entered same date as Plaintiff's October 14, 2005 appointment with the oral surgeon, Foster indicated that he would order an antibiotic (Amoxicillin) and also Percocet for Plaintiff's pain. *Id*. The order for Percocet was forwarded to the medical department because the narcotic is not kept in the Dental Department's stock. It is acknowledged, however, that later that date Plaintiff was given Motrin, rather than the Percocet. *Id*. According to the exhibits Plaintiff went to the MHCA dispensary at 9:00 p.m. on October 14, 2005, seeking pain medication prescribed for him after his surgery. *Id*. A nurse evaluated him and advised him that that particular pain medication was not available, but called a physician's assistant to advise her of Plaintiff's complaint. According to Defendants' exhibits, by the time the physician's assistant arrived in the dispensary Plaintiff had gone and refused to return. *Id*.

On October 20, 2005, Foster again examined Plaintiff, who informed the dentist that he had not received the medication prescribed by UMMS nor been rescheduled for a follow-up appointment at UMMS. *Id*. Foster completed and submitted an off-site consultation form for approval and submitted an order for the medication to the pharmacy. Paper No. 14, Exs. B & C. Plaintiff refused any substitute analgesic or antibiotic and insisted on the narcotic analgesic with the accompanying antibiotic. *Id*.

On October 22, 2005, Plaintiff submitted a sick-call request for narcotic pain medication. The request was received on October 24, 2005. *Id*. On October 31, 2005, Foster decreased Plaintiff's Percocet order from four times a day to twice a day PRN. *Id*. Plaintiff received Percocet twice a day from November 1, 2005, to November 3, 2005. *Id*. Mulleta states that since November 3, 2005, Plaintiff has not complained about dental pain nor requested narcotic pain medication for it. *Id*. Mulleta claims that Plaintiff continues to be treated for his migraine headaches. *Id*.

In his Opposition, Plaintiff claims that Mulleta did not follow the orders of the UMMS physician.[7] Paper No. 20 and Exs. H-1 to H-7 & K-1 to K-14. He further states that he complained about his dental problems after November 3, 2005. *Id*.

The records and affidavits submitted to the court do not bear out Plaintiff's claims that his post-dental-surgical care was so inadequate as to violate the Eighth Amendment. There is no dispute that an oral surgeon prescribed Vicodin as part of Plaintiff's care after extraction of his tooth. Further, it is not disputed that Dr. Mulleta ordered the Percocet, rather than the Vicodin, to be provided for 48 hours as needed. The Eighth Amendment does not, however, entitle Plaintiff to the particular narcotic pain analgesic of his choice. Moreover, Plaintiff does not dispute Mulleta's claim that he did not request the medication over the two days following his surgery, although he did go to the dispensary for his Prozac regimen during that same 48-hour period.

The record further shows that Plaintiff was seen by nurses, physician's assistants, the aforementioned UMMS oral surgeon, and Foster for his post-surgical-dental care during a two-month period. Mulleta affirms that he saw Plaintiff for other conditions not related to his dental care. Plaintiff was provided Motrin, antibiotics, and had dental paste dressings twice applied to the extraction site. The court notes that approximately one month after the September 6, 2005 surgery, Plaintiff was seen by the oral surgeon, who found no evidence of swelling, redness, or infection. Notwithstanding the oral surgeon's findings that the surgical site was healing normally, Foster ordered Percocet and an antibiotic on October 14, 2005, due to Plaintiff's subjective complaint of

---

[7] On February 22, 2006, Plaintiff filed his third amended complaint, seeking to "broaden the above civil action from the date of March 29, 04 to the date of February 5, 06." Paper No. 19. The Motion to Amend was denied by this court on April 14, 2006. *See* Paper No. 30. Plaintiff's Opposition raises a panoply of claims, accompanied by voluminous exhibits, which concern the alleged denial of medical care from March of 2004 to the present related to care for problems with his throat, jaw, head, eyes, nerves, and stomach. Paper No. 20. For those reasons stated by the court in its April 14, 2006 Order, such issues are not before the court and will not be addressed. Plaintiff is, however, free to raise those claims in a separate 42 U.S.C. § 1983 action.

pain. The Percocet order was not filled on that date. Plaintiff was told that the medication was not available in the dispensary at that time and was given Motrin. Plaintiff was dissatisfied with this form of non-narcotic pain analgesic. After further complaints, the Percocet medication was reordered by Dr. Foster on October 20, 2005, and was provided to Plaintiff on November 1, 2005. While there were apparently delays in providing Plaintiff the narcotic pain medication, the court finds that the care provided by Defendants meets acceptable constitutional levels and that Plaintiff has failed to demonstrate that either named Defendant was deliberately indifferent to his subjective claims of post-surgical-dental pain.

IV.   *Conclusion*

For the aforementioned reasons, Mulleta's Motion to Dismiss or for Summary Judgment, treated as a Motion For Summary Judgment, is hereby granted. Judgment is entered in favor of Mulleta and against Plaintiff. Because the court finds no deliberate indifference on the part of Defendant Foster, the cause of action raised against him shall be dismissed. A separate Order follows.

Date: June 5, 2006                     _____/s/_____
                                       Alexander Williams Jr.
                                       United States District Judge